UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARCUS D. MAYS #218101,

        Plaintiff,

v.

UNKNOWN PYNNONEN, et al.,

        Defendants.
_____/

Case No. 2:17-cv-000167

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### Introduction

    This is a civil rights action brought by state prisoner Marcus D. Mays pursuant to 42 U.S.C. § 1983. Mays asserts various constitutional claims against MDOC employees and healthcare workers at the Baraga Correctional Facility (AMF). Before the undersigned is Defendant Kristine Nyquist's motion for summary judgment. (ECF No. 43.) Because Defendant Nyquist has shown that she is entitled to judgment as a matter of law, the undersigned respectfully recommends that the Court grant Defendant Nyquist's motion.

### Background[1]

    Mays's claims in this case arise from a series of events that occurred while he was incarcerated at AMF. Defendant Nyquist is a Nurse Practitioner at AMF and

---

[1] Defendant Nyquist's motion for summary judgment is the only motion before the Court; therefore, the undersigned will focus on the allegations that are relevant to the claims against Defendant Nyquist.

provided treatment to Mays in 2017. Mays asserts three claims against Defendant Nyquist: (1) a deliberate indifference claim; (2) a retaliation claim; (3) and an access-to-courts claim. All three of these claims stem from an alleged denial of medical treatment on June 5, 2017.

By way of background, Mays had an x-ray of his right index finger on May 25, 2017. When Mays was returning to his cell after the x-ray, he alleges that several corrections officers assaulted him. As a result of the altercation, Mays claims that he suffered injuries to his head and jaw. Over the next several days, Mays had several interactions with other healthcare workers.[2] Mays sent several healthcare kites complaining of his head and jaw injuries, as well as claiming that corrections officers were poisoning his food causing him to vomit "specks of blood." (ECF No. 45, PageID.458-471.)

On June 1st, Defendant Nyquist reviewed Mays's finger x-ray. (ECF No. 45, PageID.472.) The x-ray showed no fractures. Several days later, on June 5th, Defendant Nyquist examined Mays in response to the healthcare kites. (ECF No. 45, PageID.477-479.) At this appointment, Defendant Nyquist informed Mays that his finger x-ray was normal. Mays again complained of head and jaw pain and told Defendant Nyquist that corrections officers were poisoning his food.

In his complaint, Mays asserts that Defendant Nyquist refused to treat him because Mays refused to sign off on a grievance that he wrote against Defendant Nyquist on December 29, 2016. According to the medical records, Defendant Nyquist

---

[2] Some of these healthcare workers are also Defendants in this case.

assured Mays that no one was poisoning his food and instructed him to contact healthcare if his hemoptysis (coughing up blood) and jaw swelling returned or if he developed a headache. (ECF No. 45, PageID.477-479.)

On June 12th, Defendant Nyquist evaluated Mays again for similar complaints. (ECF No. 45, PageID.491-493.) At this appointment, Defendant Nyquist told Mays that his throat was normal. Defendant Nyquist also ordered Excedrin Migraine and an x-ray of Mays's jaw. The x-ray of Mays's jaw was taken on June 15th. (ECF No. 45, PageID.495). A few days later, Defendant Nyquist reviewed the x-ray and determined that there was no fracture. (ECF No. 45, PageID.497-500.)

On July 24th, Mays had another appointment with Defendant Nyquist. (ECF No. 45, PageID.510-512.) At this appointment, Mays again complained of burning in his throat, as well as blisters in his nose. Mays said that he had temporal headaches "since being 'punched by the COs' on 5/25/2017." However, Mays also told Defendant Nyquist that the Excedrin Migraine was helping with the headaches. In response, Defendant Nyquist told Mays that the physical examination of his throat and mouth were normal. Defendant Nyquist then explained to Mays that she could not increase the Excedrin Migraine dosage because Mays was already receiving the maximum quantity of 60 pills per month.

Mays next saw Defendant Nyquist on October 16th for a "chronic care visit." (ECF No. 45, PageID.553-556.) The last involvement that Defendant Nyquist had with Mays's medical treatment occurred on October 30th, when Defendant Nyquist updated Mays's medical chart. (ECF No. 45, PageID.560-561.)

3

**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

**Analysis**

Mays claims that Defendant Nyquist violated his constitutional rights when she refused to provide medical treatment to him on June 5, 2017. Specifically, Mays asserts three claims against Defendant Nyquist: (1) a deliberate indifference claim; (2) a retaliation claim; (3) and an access-to-courts claim.

**I.     Deliberate Indifference**

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).

4

A prisoner's Eighth Amendment rights are violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5

5

(6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty*, 466 F.3d 416, 434 (6th Cir. 2006).

In this case, Mays has not presented any evidence to establish that he was suffering from a serious medical need. Mays claims that his head hurt, his jaw was swollen, and his throat was burning. Despite Mays's assertions, neither Defendant Nyquist nor any other medical professional found any abnormalities. For example, at the appointment on June 5th, Mays admitted that the swelling in his jaw had "gone down." (ECF No. 45, PageID.477.) The medical records also show that Defendant Nyquist conducted an exam of Mays's throat, which revealed "normal" findings. (ECF No. 45, PageID.478.) There is no evidence showing that any prison officials were poisoning his food. And, finally, the x-rays of Mays's jaw revealed no fractures. (ECF No. 45, PageID.499.) Even viewing the evidence in the light most favorable to Mays, the minor injuries are not sufficient to satisfy the objective component. *See Lockett v. Surardini*, 526 F.3d 866, 876 (6th Cir. 2008) ("[M]inor cuts and lacerations do not support his claim that his injuries were, objectively speaking, sufficiently serious to necessitate medical treatment[.]").

In addition, Mays was not completely denied medical care. In fact, after the alleged assault occurred on May 25th, the medical records establish that Mays was seen by several other medical professionals at callouts and cellblock rounds. (ECF

6

No. 45, PageID.460-476.) And although Mays focuses on the June 5th appointment in his complaint and response brief, it is undisputed that Defendant Nyquist treated Mays for the same injuries shortly thereafter. On June 12th, Defendant Nyquist ordered an x-ray of Mays's jaw and prescribed Excedrin Migraine. It appears that Mays would have preferred that Defendant Nyquist provided this treatment on June 5th. But Mays was already prescribed ibuprofen and Naproxen on June 5th. Further, "the question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). The undersigned will not question Defendant Nyquist's medical judgment to not order an x-ray of Mays's jaw on June 5th. Therefore, in the opinion of the undersigned, Defendant Nyquist is entitled to summary judgment on Mays's deliberate indifference claim.

## II. Retaliation

Mays next asserts that Defendant Nyquist retaliated against him when she refused to provide medical treatment to him on June 5th. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* "Once the

7

plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Id.* at 399 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.*

Here, as described above, Defendant Nyquist was not deliberately indifferent to Mays at the June 5th appointment. Instead, Defendant Nyquist made a medical judgment and Mays disagrees with that medical judgment. But even assuming that the lack of treatment could constitute an adverse action, Mays fails to show a causal connection between the adverse action and the protected conduct. Mays claims that Defendant Nyquist refused to treat him on June 5th because Mays refused to sign-off on a grievance that was written on December 26, 2016. Thus, Mays claims that Defendant Nyquist was retaliating against him for a grievance that was filed over five months before the June 5th appointment. Simply put, no reasonable jury would find that Defendant Nyquist waited over five months to retaliate against Mays by not providing medical treatment, but then would provide medical treatment for the same injuries a few days later. Because Mays fails to show that he suffered an adverse action or that the adverse action was motivated at least in part by the protected conduct, the Court should grant Defendant Nyquist summary judgment on the retaliation claim.

8

### III. Access to the Courts

Finally, Mays asserts an access-to-courts claim against Defendant Nyquist. It is well-established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual prejudice or "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

Here, Mays claims that Defendants Nyquist acted "with intent to deter me from taking any further legal action against her and staff." (ECF No. 57-1, PageID.612.) But Defendant Nyquist – as a medical professional – had no role in ensuring Mays had access to the courts. More importantly, Mays does not identify any time in which Defendant Nyquist actually interfered with his right to access the courts. Thus, Mays fails to show that he suffered any actual injury. Therefore, in the opinion of the undersigned, Defendant Nyquist is entitled to summary judgment on Mays's access-to-courts claim.

## Recommendation

Accordingly, the undersigned respectfully recommends that that the Court grant Defendant Nyquist's motion for summary judgment (ECF No. 43).

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn,* 474 U.S. 140 (1985).

Dated: August 5, 2019

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE